UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
HECTOR GARCIA ORTIZ,                   :        15cv2206(DLC)
                                       :
                 Plaintiff,            :        OPINION & ORDER
      -v-                              :
                                       :
THE CITY OF NEW YORK, POLICE OFFICER   :
EDWIN VAZQUEZ, AND POLICE OFFICER      :
STEPHANIE HANNA,                       :
                                       :
                 Defendants.           :
                                       :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Ameer Benno
410 E. Jericho Turnpike
Mineola, NY 11501

For the defendants:
Melanie Speight
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     This 42 U.S.C. § 1983 case was tried to verdict before a

jury in December 2017.  At the conclusion of the four-day trial,

the jury returned a mixed verdict.  The jury found in favor of

defendants with respect to the plaintiff's unlawful seizure

claim.  The jury found in favor of plaintiff with respect to the

excessive force claim, and awarded the plaintiff $118,000 in

compensatory damages.  Defendants have moved for post-verdict

relief.  For the following reasons, judgment as a matter of law is entered in the defendants' favor.

BACKGROUND

Plaintiff Hector Garcia Ortiz ("Ortiz") commenced this action on March 24, 2016 against the City of New York ("City") and John Does 1-5.  Defendants Officer Edwin Vazquez ("Vazquez") and Officer Stephanie Hanna ("Hanna") were named in Ortiz's Amended Complaint, filed on March 21, 2006.  He alleged claims of false arrest and imprisonment in violation of 42 U.S.C. § 1983 and New York law, the use of excessive force in violation of 42 U.S.C. § 1983, assault and battery in violation of New York laws and negligence and gross negligence.  On November 30, 2016, summary judgment was granted in favor of defendants as to the plaintiff's claims of negligence and his claim of excessive force against Hanna.  At a pretrial conference held on July 6, 2018, the parties agreed that the City was a defendant only with respect to respondeat superior liability, if applicable.  Trial began on December 11, 2017, and the case was submitted to the jury on December 14.  Ortiz withdrew his battery claim prior to the jury's deliberations.

At trial, the plaintiff asked the jury to accept the following version of events.[1]  He had had five or six beers at a friend's house on June 1, 2014.  As he was walking alone on his way home in the early evening, Vazquez stared at him intently.  Ortiz walked up to Vazquez, held up his hands and shouted "what's happening" at the officer.

As Ortiz walked away, Vazquez viciously attacked him from behind without warning.  Vazquez grabbed his right hand, twisting it behind his back, and ferociously kicked at the inside of his right knee, cracking a knee bone and sending Ortiz to the ground.  Vazquez then descended on Ortiz, sitting on his back, grinding Ortiz's face into the pavement and driving his knee into Ortiz's back.  Vazquez then tightly handcuffed Ortiz, wrenching his wrist.  Hanna and Vazquez called for an ambulance and sent Ortiz to St. Luke's Hospital.  He contends that surgery will be required to mend a medial meniscus tear in his knee, for his back and his wrist.  He may also need knee replacement surgery.

The hospital records reflect that Ortiz was ambulatory when he arrived, but intoxicated, agitated, abusive, and a danger to hospital staff.  Hospital staff sedated Ortiz and treated him for his intoxication.  The chief complaint on his triage notes

---

[1] This version of events is based on Ortiz's testimony at trial.

from his arrival at St. Luke's on June 1 was "intox."  The next day, after he was initially set to be discharged from the hospital, a tibial plateau fracture injury to his knee was discovered after he complained of pain as he walked.  He was later discharged with instructions to "not put any weight" on his left leg, which had been bound in a cast.  The medical records do not reflect any injury to the knee's meniscus, to the back, or to the wrist.

The two defendant officers, Hanna and Vazquez, provided the jury with an entirely different description of the events of June 1.  Hanna and Vazquez are patrol officers and were handing out community safety fliers to store owners along St. Nicholas and Lenox Avenues in upper Manhattan, seeking information about a recent BB gun shooting.  Over the course of forty or so minutes they encountered Ortiz four different times in a two or three block stretch of their route.  Vazquez first saw Ortiz emerging from a liquor store.  Twice the officers saw Ortiz slumped against the side of a building with a companion standing next to him.  Each time they approached Ortiz and told him to get up and move along.  They saw his companion help him get up, but did not watch as they moved away.  They never saw him

walking steadily on his own.  Finally, they saw Ortiz lying down[2] and his companion walking away further down the sidewalk, saying "I have had enough."

When Officer Hanna approached Ortiz on this final occasion, she discovered that he was highly intoxicated.  When she spoke to him, he appeared to be sleeping, but as he livened, she realized that he was heavily intoxicated: he was incoherent and smelt of alcohol.  When defendants told Ortiz to get up off the ground, Ortiz became more and more agitated and angry.  He got up, without assistance, and tried to stagger away.  At some point, Hanna called for an ambulance.  She decided to send Ortiz to a hospital for his own safety and the safety of others. Hanna could not recall if she called the ambulance immediately after perceiving Ortiz's level of intoxication, or if she did so after he attempted to walk away from her and Vazquez, staggering.  Hanna stood in front of Ortiz to prevent him from leaving.  Vazquez stood on Ortiz's other side, so that Ortiz was between the two officers.  Ortiz began to stumble in circles in between the officers, getting angrier and angrier, hurling abusive comments at them and at himself.  At that point, Hanna

---

[2] Hanna testified that they found Ortiz lying on the street, right off the sidewalk pavement, between two parked cars. Vazquez testified that they found him lying on the sidewalk pavement.

used her radio to ask for an estimated time of arrival of the ambulance.

Ortiz continued to pace around in a tight area, between the officers, spouting expletives and shouting. At some point he raised his fists in the air. He threw a speaker he was holding to the ground with such force that it broke. He was not addressing the officers directly, nor did he throw the speaker at them. According to Hanna, "he was in his own space ranting and raving." Hanna again called for an ambulance and was told that there would be a wait before it arrived. It was then that the officers decided to handcuff Ortiz for his safety.

The officers grabbed Ortiz's arms, handcuffed him, placed their hands on his shoulders, and brought him down to a seated position on the pavement. He did not resist the handcuffing, but, once he was on the ground, he shouted and kicked the air with one of his legs, tumbling over to his side. (Officer Hanna likened him to a turtle who has been turned over on his shell and thrashes his limbs to get up.)

The ambulance finally arrived, and the officers accompanied Ortiz to the hospital. Hanna rode in the ambulance with Ortiz, while Vazquez drove the police vehicle. When Ortiz arrived at the hospital, he was placed in the trauma room, an area where patients who need immediate attention are placed. He was so

agitated and combative that medical staff sedated him.  It was only safe to remove the handcuffs after he had been sedated.

Ortiz's treating physician, Dr. Gabriel Dassa, testified on his behalf at trial.  He first saw Ortiz in late October 2014, about five months after the incident.  Ortiz only went to Dr. Dassa for an evaluation after he had filed a notice of intent to sue the officers and the City of New York.  Plaintiff's counsel had referred Ortiz to Dr. Dassa.  The doctor explained to the jury that the fracture to the knee could only have been caused by extreme force -- like a blow -- from the inside of the leg, causing the knee to bend outwards.  He explained that such an injury could not result from an accidental fall.  Dr. Dassa also testified that Ortiz suffered from a "tear of the medial meniscus," the cartilage in the knee, and concluded that the force that caused the fracture also caused that tear.  He also treated Ortiz for a wrist injury, which he testified could only be the result of a significant amount of force, and observed disc herniations in Ortiz's lower back, which he explained could have been caused by trauma.

Throughout the trial, the Court sought to clarify plaintiff's position on the relationship between the claims of excessive force and illegal seizure.  On December 12, counsel for the plaintiff was asked the following:

So the plaintiff is only seeking damages, is only claiming
there was an excessive use of force and seeking damages as
a result of that excessive use of force if the jury finds
that he was unlawfully seized on June 1st.  If they find --
if they believe the defendants that they placed handcuffs
on the plaintiff after they found him, encountered him
lying on the pavement, the plaintiff is not seeking damages
for an excessive use of force.  Do I have this straight?

Counsel for the plaintiff responded, "Yes, your Honor."

The next day, however, plaintiff took a different position:

I would just submit to your Honor that there is not a
binary choice that the jury has in accepting plaintiff's
account in total or the defendant's.  You were correct if
they believe his account that must . . . mean they
disbelief [sic] the defendant.  If they believe the
defendants' account they're obviously [unintelligible
reporter code] the plaintiffs.  As your Honor is aware, the
jury can find some common ground in-between.  They can take
some, credit some testimony from the defense and some from
the plaintiff and they may find that, in fact, the truth
lies somewhere in between.

When the defendants acknowledge that they brought Mr.
Vazquez to the ground, they claim he was in handcuffs and
they had to bring him down to the ground, perhaps they find
at that moment in time, despite the fact placing him in
handcuffs was proper, they could it was lawful but they did
that with a degree of excessive force.  So it is not
mutually exclusive, the false arrest and the excessive
force.  As I understood you earlier and if I misunderstand,
I apologize, but I had the impression that you were viewing
this more as sort of a binary, one or the other.  I think
it could potentially be, the jury finds there is -- the
truth lies . . . in-between.

A draft jury charge was presented to counsel on December
13.  The draft jury charge included the presentation of an
"Additional Question," after the jury was charged on the
elements of unlawful seizure:

> As you are aware, the plaintiff contends that Officer
> Vazquez attacked and then handcuffed him as he was walking
> down the street.  The defendants contend that they
> handcuffed him after they saw Mr. Ortiz down on the
> pavement.  If you find that one or both of the defendants
> unlawfully seized the plaintiff on June 1 2014, there is an
> additional question you must answer.
> Did the defendants prove, by a preponderance of the
> evidence, that they handcuffed the plaintiff after the
> officers observed him down on the pavement on June 1, 2014?

At a charging conference on the morning of December 14,

plaintiff's counsel objected to the additional question

"entirely."  The Court explained that the question was included

"because of the qualified immunity defense."

At the close of evidence on December 13, defendants moved

for judgment as a matter of law.  With respect to the excessive

force claim, defendants argued that

> no reasonable juror would believe plaintiff's version of
> events.  There has been no evidence put forth that on the
> defendants' version of events any type of excessive force
> was used [on] the plaintiff.  [According to] defendants'
> version at most they handcuffed him and sat him down on the
> ground  . . . .

The defendants added, "[i]n any case, the officers would be

entitled to qualified immunity."  Decision on the motion was

reserved, and, on December 14, the jury was charged and given a

Special Verdict Form.  The Special Verdict Form included the

"Additional Question" from the charge, but the jury was

instructed to answer that question only if it found that either

or both defendants unlawfully seized the plaintiff.[3]  The jury
was not instructed to answer the question if it found that
Vazquez used excessive force against Ortiz.

On December 15, the jury returned its verdict.  The jury
returned a verdict in favor of defendants with respect to the
the unlawful seizure claim.  The jury returned a verdict in
favor of Ortiz with respect to his unlawful force claim against
Vazquez, and awarded Ortiz compensatory damages totaling
$118,000.  The damages total reflected an award of $30,000 for
past physical pain and suffering, $10,000 for future pain and
suffering, and $78,000 for future medical expenses.  The jury
awarded Ortiz no damages for "conscious pain and suffering from
the time of his first encounter with the defendants until the
time he was placed in the ambulance" and no punitive damages.

Before returning its verdict, the jury submitted multiple
notes to the Court.  One note requested the "[t]ranscript of Dr.
Dassa's estimate for all future surgical / medical costs for

---

[3] 1. Did the plaintiff establish by a preponderance of the
evidence  that he was unlawfully seized by
    a. Officer Vazquez?
                YES _____               NO _____
    b. Officer Hanna?
                YES _____               NO _____
    **[Only answer sub-question i. if you answered "yes" for
    either of the defendants for question 1.]**
    i. Did the defendants prove, by a preponderance of the
    evidence, that they handcuffed the plaintiff after the
    officers observed him down on the pavement on June 1, 2014?
                YES _____               NO _____

plaintiff." Dr. Dassa testified that he believed the cost of surgery for Ortiz's wrist injury would be between $30,000 and $35,000; the cost of spine surgery for a herniated disc would be between $75,000 and $100,000; and the cost of a total knee replacement would be between $65,000 and $70,000.

After the jury returned its verdict, the Court spoke with counsel, explaining that it would pose the Additional Question to the jury in a Supplemental Verdict Form.

> So counsel, as you all remember, the plaintiff shifted its position at one point as to whether or not the excessive force charge was tethered or not to the false arrest claim, and I prepared this verdict sheet and talked through these issues at the time at which plaintiff's counsel said they were tethered.
>
> The next day, plaintiff's counsel clarified that he believes they were not tethered and didn't want to submit them as tethered to the jury. Therefore, the verdict sheet that the jury filled out only required them to answer the factual question if they found there was a false arrest.
>
> Given that the legal claims became untethered, they have not been instructed to answer the factual question. I need them to answer the factual question, and therefore, I plan to bring them in, give them this supplemental verdict form, ask them to answer that single question.

The Court added that it believed that the jury's verdict indicated that it had rejected the plaintiff's version of events, and that the Supplemental Verdict Form would clarify the jury's verdict.

> I think, from the verdict the jury has returned, one could infer quite comfortably from it that the jury has not found the plaintiff's version of facts to have been credible and that they find that any excessive force that could be said

to have occurred here only occurred at the time the defendants were approaching the plaintiff after they observed him down on the pavement.

Plaintiff's counsel objected to the use of the Supplemental Verdict Form. Counsel argued that the question was "irrelevant to excessive force and it bears on qualified immunity. There's an objective standard for excessive force. Under qualified immunity, the inquiry isn't relevant to that." Plaintiff's counsel declined to offer alternative wording for the Supplemental Verdict Form. Defense counsel did not object.

Subsequently, the jury was presented with the Supplemental Verdict Form, asking "Did the defendants prove, by a preponderance of evidence, that they handcuffed the plaintiff after the officers observed him down on the pavement on June 1, 2004?" When the Supplemental Verdict Form was presented, the jury was told the following:

> We have just one brief question for you to answer. I'm going to give you another verdict form with that one question on it. It's a question you've seen before. I should have had you answer it already, but you didn't have to because of the sequence of questions.

> But let me begin by asking you to turn to page 11 of the jury charge. And I'm just going to read this to you.[4] The heading is Additional Question.

> "As you are aware, the plaintiff contends that Officer Vazquez attacked and then handcuffed him as he was walking down the street. The defendants contend that they

---

[4] Each member of the jury had been given a copy of the jury charge to read along as the Court read it aloud to them. They retained their copies during deliberations.

handcuffed him after they saw Mr. Ortiz down on the
pavement.  If you find that one or both of the defendants
unlawfully seized the plaintiff on June 1, 2014, there is
an additional question you must answer: Did the defendants
prove, by a preponderance of the evidence, that they
handcuffed the plaintiff after the officers observed him
down on the pavement on June 1, 2014?"

Now my charge only requires you to respond to that question
if you had found there was an unlawful seizure.  I realize
I should have asked you to respond to that question even if
you found there was no unlawful seizure but there was an
unlawful use of force, okay?  So it's the same question,
the same contrasting set of facts.

After brief deliberations, the jury returned the Supplemental

Verdict Form.  The jury answered, "Yes."  The jury was

dismissed.

After the jury was dismissed, the defendants moved, in

light of the jury's verdict and the jury's response to the

Supplemental Verdict Form to "set aside the verdict with respect

to force with respect to Officer Vazquez, and ask[ed] that the

Court enter judgment as a matter of law in favor of Officer

Vazquez."  The defendants renewed their Rule 50 motion, and

added that they intended as well "to seek qualified immunity."

The defendants were instructed to submit the request in writing.

The defendants' motion for judgment as a matter of law became

fully submitted on February 23, 2018.

<u>DISCUSSION</u>

The standard for granting judgment as a matter of law under Rule 50, Fed. R. Civ. P., is well-established. "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in h[er] favor." <u>Stevens v. Rite Aid Corp.</u>, 851 F.3d 224, 228 (2d Cir. 2017) (citation omitted). This standard "mirrors the standard for" summary judgment under Rule 56, Fed. R. Civ. P, except based on the trial record rather than the summary judgment record. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>see</u> <u>Piesco v. Koch</u>, 12 F.3d 332, 341 (2d Cir. 1993).

Rule 50 "imposes a heavy burden on [the] movant, who will be awarded judgment as a matter of law only when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." <u>Cash v. Cty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (citation omitted). Rule 50's "burden is particularly heavy where . . . the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." <u>Id.</u> (citation omitted). In such circumstances, a court may set aside the verdict only if, viewing the evidence in the light most favorable to the non-movant, "there exists such a complete absence of evidence

supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Id. (citation omitted).

In reviewing a Rule 50 motion, a court "must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (citation omitted). Judgment as a matter of law should be granted only if the moving party shows "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." In re Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1131 (2d Cir. 1995).

"[J]udgment may not be entered pursuant to inconsistent special verdicts." Lavoie v. Pacific Press & Shear Co., A Div. of Canron Corp., 975 F.2d 48, 53 (2d Cir. 1992) (citation omitted). Rule 49(b) of Federal Rules of Civil Procedure permits a jury to make written findings of fact and to enter a general verdict. See Fed. R. Civ. P. 49(b). Under Rule 49(b) "[w]hen answers to special interrogatories are . . . inconsistent with the general verdict, the court may either

enter judgment in accordance with the interrogatories or return the issue to the jury for further consideration." <u>Armstrong ex rel. Armstrong v. Brookdale Univ. Hospital and Medical Center</u>, 425 F.3d 126, 135 (2d Cir. 2005). "Rule 49(b) does not, however, authorize the court to enter judgment based on the general verdict despite answers to interrogatories that conflict with that verdict." <u>Id.</u> A "district judge is in the best position to determine whether the [jury's] answers reflect confusion or uncertainty." <u>Kerman v. City of New York</u>, 261 F.3d 229, 244 (2d Cir. 2001) (citation omitted).

"[A] party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." <u>Kosmynka v. Polaris Industries , Inc.</u>, 462 F.3d 74, 83 (2d Cir. 2006) (citation omitted). But,

> [T]here is no authority to support [the] contentions that, when faced with an inconsistent verdict, the onus is on the dissatisfied party to <u>ensure</u> that the court keep the jury . . . . A litigant preserves the issue . . . by exposing the inconsistency before the jury is dismissed, so that the court has available to it the option of re-submitting the questions to the jury after some further instruction.

<u>Id.</u> at 83-84 (emphasis in original).

  1. The Jury Rejected Ortiz's Version of Events.

Judgment as a matter of law in favor of Vazquez on the excessive force claim is appropriate here. As made clear by their verdict, including their answer to the supplemental

question, the jury rejected plaintiff's version of events.  In
rejecting Ortiz's unlawful seizure claims, and in answering
"Yes" to the question on the Supplemental Verdict Form, the jury
found both that there was no unlawful seizure by either officer
and that the officers had not seized Ortiz as he was walking
along his way home, but only after they had encountered him
lying on the pavement.  This precludes a finding that Vazquez
attacked him as he walked along the sidewalk and used excessive
force in doing so.  Based on the evidence at trial, a reasonable
juror could find either that there was both an unlawful seizure
and excessive force in making that seizure, or that there was
neither.[5]  A verdict finding no seizure but nevertheless
excessive force is wholly inconsistent with the evidence and
with the respective cases the parties presented.

The jury's refusal to award Ortiz damages for any conscious
pain and suffering provides further support for this conclusion.
The jury awarded Ortiz no damages for "conscious pain and

_____

[5] The plaintiff is correct that, in theory, unlawful seizure and
the use of excessive force need not be inextricably linked.
Here, however, the plaintiff's version of events made them so.
Ortiz's testimony at trial, and the evidence he offered, was
that the altercation between him and Vazquez was so sudden and
quick that any unlawful seizure and use of excessive force were
simultaneous: according to his testimony, as he walked away,
Vazquez grabbed him, attacked him from behind, forced him to the
ground, and placed him in handcuffs.  Ortiz could not recall
precisely when handcuffs were placed on him but that it was
shortly after the attack, when Vazquez was using force, holding
him down, and driving his knee into Ortiz's back.

suffering from the time of his first encounter with the defendants until the time he was placed in the ambulance."  It follows, then, that the jury believed the defendants' testimony that they encountered Ortiz lying on the ground, intoxicated beyond full comprehension of his surroundings.  This justified their seizure of him as necessary for his protection and the safety of the community due to his intoxication.  At such a degree of intoxication, Ortiz could not possibly have experienced <u>conscious</u> pain and suffering.[6]

It is true that Ortiz had a tibial plateau fracture to his left knee on June 2.  Dr. Dassa testified that the injury could only have occurred by use of direct applied force, because falling could not cause that particular kind of damage.  But, without Ortiz's description of an unprovoked attack by Vazquez, there is no basis in the evidence to attribute that injury to Vazquez.  There is no evidence that any unreasonable force of that kind was ever used by either officer after they encountered Ortiz lying abandoned by his companion.  Ortiz did not call any witnesses to corroborate his story, despite the fact that the

---

[6] The jury also denied the plaintiff any punitive damages, which they were instructed were appropriate if they believed "that [Vazquez] should be punished for conduct that was motivated by an evil motive or intent, or that involved callous disregard or indifference to Mr. Ortiz's rights."  The unprovoked vicious attack described by Ortiz would have, if credited, supported an award of punitive damages.

events occurred in broad daylight in the middle of a busy area, St. Nicholas Avenue, in front of multiple storefronts. There is simply an absence of evidence of how the injury occurred. It would be entirely speculative to attribute it to Vazquez.

Ortiz argues that Vazquez's Rule 50 motion is deficient because defense counsel never specifically articulated the basis for a motion for judgment as a matter of law on the claim of excessive force. He argues that, until briefing, defendants only argued that plaintiff's version should be rejected, not that there was "no evidence of excessive force adduced at trial." This argument is unavailing. First, when moving for judgment as a matter of law on the excessive force claim, defendants argued that "no reasonable juror would believe plaintiff's version of events." There is no meaningful distinction between an argument that plaintiff's version of events was incredible and an argument that there was no evidence of force adduced at trial. In this context, these are the same argument, because they both support the broader, principal point, which is that no reasonable jury could find that Vazquez attacked Ortiz from behind, using excessive force.

Second, even if there were a meaningful distinction, when a party does not properly "specify the judgment sought and the law and facts that entitle the movant to the judgment," Fed. R. Civ P. 50(a)(2), a court may nevertheless grant a Rule 50 motion in

order to prevent "manifest injustice." <u>Fabri v. United Techs.</u>
<u>Int'l Inc.</u>, 387 F.3d 109, 119 (2d Cir. 2004). Here, entering a
general verdict contrary to the evidence the jury found credible
would create a manifest injustice.

2. The Jury Returned an Inconsistent Verdict.

The jury answered a special interrogatory that was
inconsistent with the general verdict of excessive force, and
thus a judgment consistent with the special interrogatory may be
entered pursuant to Rule 49. That judgment is for defendant
Vazquez.

First, the answers on the Special Verdict Form were
inconsistent with each other: the jury could not have reasonably
found for the defendants on the unlawful seizure claim, but for
the plaintiff on the excessive force claim. Next, the jury was
presented with the Supplemental Verdict Form to clarify their
factual findings. In answering the question on the Supplemental
Verdict Form -- that the defendants proved, by a preponderance
of the evidence, that they handcuffed the plaintiff after the
officers observed Ortiz down on the pavement on June 1, 2014 --
the jury demonstrated that they did not believe, based on the
evidence and testimony presented at trial, that Vazquez had
attacked Ortiz from behind as he walked along St. Nicholas
Avenue, using excessive force. The answer to the factual
interrogatory on the Supplemental Verdict Form was inconsistent

with the general verdict that Vazquez was liable for the use of excessive force.

3. Vazquez Is Entitled to Qualified Immunity.

Vazquez has moved in the alternative for qualified immunity on the excessive force claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (citation omitted). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (citation omitted). The Second Circuit has noted that

> [i]f a police officer uses excessive force in violation of a plaintiff's constitutional rights, it is to be expected that the victim will suffer harm proximately caused by the excessive force. If, however, the police officer proves the facts that entitle him to qualified immunity . . . judgment must be entered in his favor, notwithstanding his having violated the plaintiff's rights and caused damages.

Azcel v. Labonia, 584 F.3d 52, 57 (2d Cir. 2009). The Supreme Court has recently noted the importance of this factor to the excessive force inquiry, noting police officers "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Kesila v. Hughes, 584 U.S. ____ , ___ (2018) (per curiam)(slip op., at 5) (reversing Ninth Circuit denial of

qualified immunity in an excessive force case where a police
officer shot plaintiff, who was moving towards another person
with a knife and ignored orders to stop, because plaintiff's
rights were not clearly established).

For the reasons discussed above, the request for qualified
immunity is unnecessary here. If the jury had found that Ortiz
was credible, and that Vasquez viciously and without provocation
attacked him from behind, injuring his knee and sending him to
the ground, then Vasquez would not be entitled to qualified
immunity for such conduct. Any reasonable officer in that
situation would have understood that such conduct violated
Ortiz's rights. But, the defendants succeeded in proving that
that sequence of events did not occur.

Accordingly, the only evidence regarding force that remains
available for consideration is the force that Vazquez (and
Hanna) used as they restrained Ortiz while waiting for the
arrival of the ambulance. That force was minimal and entirely
reasonable. Placing their hands on his shoulders and moving
Ortiz to a seated position on the ground did not constitute an
excessive use of force, and plaintiff's counsel does not argue
otherwise.

Nor, of course, do such limited actions by the officers
explain the serious knee injury that Dr. Dassa described to the
jury. There is simply a complete absence of evidence as to how

Ortiz injured his knee, once the jury rejected his description of Vasquez' unprovoked attack on him.

Accordingly, if it were necessary to reach the issue of qualified immunity, Vazquez has shown that he would be entitled to qualified immunity because a reasonable officer confronted with a very intoxicated Ortiz would have been entitled to use the force exerted by Vasquez (and Hanna) to restrain Ortiz. This use of force was objectively reasonable and Vazquez did not violate Ortiz's clearly established rights.

Plaintiff argues that Vazquez waived any qualified immunity defense. He did not. Defendants explicitly reserved the right to submit a proposed charge on qualified immunity and to submit proposed special interrogatories on the qualified immunity defense.[7] Vazquez has argued, at every turn, that he is entitled to qualified immunity. He has not waived his argument.

Finally, Ortiz argues that the Rule 50 motion should have included a more expansive description of the qualified immunity request. With respect to specificity, the requirement is simply that the qualified immunity defense be explicitly articulated. See, e.g., Provost v, City of Newburgh, 262 F.3d 146, 161-62 (2d

---

[7] After the Court explained at the charging conference that the Additional Question, which would later become the Supplemental Jury Question, was included "because of the qualified immunity defense," the defendants did not request any additional question or charge.

Cir. 2001). Defendants met this requirement. In their Rule 50
motion, defendants stated, on the record, that they sought
judgment as a matter of law on qualified immunity grounds. They
renewed that motion after the jury returned its verdict.

CONCLUSION

Defendants' January 12, 2018 motion for judgment as a
matter of law is granted. The Clerk of Court shall enter
judgment for the defendants and close this case.


Dated:    New York, New York
          April 27, 2018


                              _____
                                      DENISE COTE
                              United States District Judge