UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                      :
HECTOR GARCIA ORTIZ,                  :          15cv2206(DLC)
                                      :
                  Plaintiff,          :          OPINION & ORDER
         -v-                          :
                                      :
THE CITY OF NEW YORK and POLICE       :
OFFICER EDWIN VAZQUEZ,                :
                                      :
                  Defendants.         :
                                      :
------------------------------------ X

APPEARANCES:

For the plaintiff:
Ameer Benno
410 E. Jericho Turnpike
Mineola, NY 11501
(212) 227-9300

Corey T. Lee
Law Offices of Corey T. Lee, PLLC
35 East Broadway
New York, NY 10002
(212) 566-5509

For the defendants:
Melanie Speight
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
(212) 356-2425


DENISE COTE, District Judge:

        The plaintiff Hector Garcia Ortiz seeks an award of

$944,987.25 in attorneys' fees and $30,170.10 in expenses, for a

total award of $975,157.35, in connection with his success in this § 1983 action in receiving a jury award of $118,000 in compensatory damages for a police officer's use of excessive force. The defendants, the City of New York ("City") and New York City Police Officer Edwin Vazquez, argue that the total award should not exceed $229,771.29. For the following reasons, Ortiz is awarded $221,502.98 in attorneys' fees and $8,268.31 in costs. Although the Court finds that an award of $132,400 in attorneys' fees likely would have been appropriate, the Court declines to award an amount lower than that proposed by the defendants.

## Background

On June 1, 2014, Vazquez and New York City Police Officer Stephanie Hanna encountered Ortiz, who was intoxicated, lying on a sidewalk in upper Manhattan.[1] They called for an ambulance and placed Ortiz in handcuffs. Ortiz was transported by ambulance to St. Luke's Hospital, where the staff sedated Ortiz because he was belligerent and intoxicated. As the hospital prepared to release Ortiz the next day after treating him for his intoxication, it discovered that he had a tibial plateau fracture injury to his knee. He was given a cast, instructed on the use of crutches, and released.

---

[1] Hanna was a defendant in this litigation, but is not a party to this attorneys' fees dispute.

At trial, the parties presented the jury with wildly differing accounts of their interactions on June 1 before the ambulance arrived. See Ortiz v. City of New York, (Ortiz III), No. 15cv2206 (DLC), 2018 WL 1989595, at *1-2 (S.D.N.Y. Apr. 27, 2018). Notably, however, Dr. Gabriel Dassa, who testified as Ortiz's expert at trial and who first saw Ortiz in late October 2014, testified that a fracture to the knee could have been caused only by extreme force, such as a blow to the inside of the leg.

Ameer Benno, Esq. accepted Ortiz as a client on June 5, 2014 on a contingency fee basis. Because Ortiz only spoke Spanish, was an alcoholic, and at times homeless, he was a challenging client for his attorneys. Benno managed the notice of claim process, seeking $5 million, and filed this action on March 24, 2015. The complaint pleaded many causes of action, all arising out of the June 1 encounter. Most did not survive until trial.

On February 22, 2016,[2] before the initial pretrial conference in this case, Corey T. Lee, Esq. filed a substitution of counsel and until October was the sole lead counsel appearing

---

[2] The initial conference in this action was delayed because Ortiz did not serve the City until May 21, 2015, the City did not answer until September 8, 2015, and Local Civil Rule 83.10 provided time for automatic discovery and mediation. Mediation was held on January 14, 2016.

on behalf of Ortiz in this litigation.[3]  Lee therefore was the attorney of record throughout the discovery period.  During that period, the parties took three depositions; they deposed Ortiz and the two individual defendants.  On October 17, 2016, following the close of discovery, Benno filed a second notice of appearance, rejoining the action as co-counsel for Ortiz.  The same day, Benno filed the brief in opposition to the defendants' motion for summary judgment.

A November 30 Opinion granted the defendants' motion for summary judgment on Ortiz's claims of negligence and his claim of excessive force against Hanna.  See Ortiz v. City of New York, No. 15cv2206 (DLC), 2016 WL 7009059 (S.D.N.Y. Nov. 30, 2016) (Ortiz I).  The claims that remained for trial were false arrest/imprisonment against the City and both individual defendants; assault and battery and excessive force against Vazquez; and an assault and battery claim against Hanna.[4]  See id. at *3.

---

[3] An Order of September 9, 2015 scheduled the initial conference to occur on March 11, 2016.  That Order and the Court's Individual Practices require principal trial counsel to attend court conferences.  Benno explains that, in anticipation of assuming new obligations at a law firm he was joining, he and Lee agreed that Lee would take over as lead counsel for this case.

[4] At the final pretrial conference, the Court dismissed the assault and battery claim against Hanna.  Ortiz withdrew his assault and battery claim against Vazquez prior to the jury's deliberations.

In advance of trial, the parties filed motions in limine addressed to sets of Ortiz's medical records reflecting interventions for his intoxication during the months before and after the June 1 incident. Ortiz's motions were filed by Lee, but not Benno. In an Opinion of November 21, 2017, the Court set out the standards that would govern the admission of the medical records at trial. Ortiz v. City of New York, No. 15cv2206 (DLC), 2017 WL 5613735, at *5-11 (S.D.N.Y. Nov. 21, 2017) (Ortiz II). None of the remaining motions in limine was noteworthy in its complexity.

The trial lasted one week.[5] It began on December 11, 2017, and the case was submitted to the jury on December 14. Five witnesses testified. They were Ortiz, his medical expert, the two individual defendants, and a physician from St. Luke's Hospital who explained the medical records associated with Ortiz's hospital stay on June 1 and 2. Benno was lead counsel for Ortiz at trial, although Lee participated as well.

---

[5] An Order of November 30, 2016 placed the case on the February 21, 2017 trial ready calendar. On February 17, the case was moved to the July 10 trial ready calendar to accommodate Benno's trial schedule. At a July 6 final pretrial conference, because a government witness was unavailable for the July trial date, the case was moved to the August 15 trial ready calendar. By Order of July 18, the trial date was moved to November 6 due to the unavailability of a witness for Ortiz. On November 2, with the consent of the parties, the November 6 trial was adjourned to December 11.

On December 15, the jury returned a verdict in favor of the defendants on Ortiz's unlawful seizure claim. It returned a verdict in favor of Ortiz with respect to his unlawful force claim against Vazquez, awarding Ortiz compensatory damages totaling $118,000. The damages reflected an award of $30,000 for past physical pain and suffering, $10,000 for future pain and suffering, and $78,000 for future medical expenses.[6] The jury awarded no damages for conscious pain and suffering from the time the defendants first encountered Ortiz until the time he was placed in the ambulance. The jury did not award punitive damages.

On April 27, 2018, this Court entered judgment as a matter of law in the defendants' favor. Ortiz III, 2018 WL 1989595, at *1. On July 17, 2019, the Court of Appeals for the Second Circuit reversed that ruling and remanded the case with instructions to reinstate the jury verdict as to the excessive force claim against Vazquez. Ortiz v. City of New York, 779 F. App'x 31 (2d Cir. 2019). The Court of Appeals observed that the jury "does seem to have accepted the officers' account of how, why, and when they handcuffed Ortiz." Id. at 34. It added, however, that the jury may have credited Ortiz's testimony that

---

[6] At trial, Ortiz's expert testified that it was likely that Ortiz would need a total knee replacement, which he estimated would cost between $65,000 and $70,000.

Vazquez kicked him at some point during the encounter.  Id. at

35.  The appeal was handled only by Lee.

## Discussion

Pursuant to 42 U.S.C. § 1988, "the court, in its

discretion, may allow the prevailing party, other than the

United States, a reasonable attorney's fee as part of the

costs."  In awarding attorney's fees, district courts calculate

a "presumptively reasonable fee."  Lilly v. City of New York,

934 F.3d 222, 230 (2d Cir. 2019) (citation omitted); Arbor Hill

Concerned Citizens Ass'n v. County of Albany, 522 F.3d 182, 183

(2d Cir. 2008).  The Second Circuit has described a

presumptively reasonable fee as one "that is sufficient to

induce a capable attorney to undertake the representation of a

meritorious civil rights case."  Restivo v. Hessemann, 846 F.3d

547, 589 (2d Cir. 2017) (citation omitted).  As the Second

Circuit recently reiterated, a fee may not be reduced "merely

because the fee would be disproportionate to the financial

interest at stake in the litigation."  Fisher v. SD Prot. Inc.,

No. 18-2504-cv, 2020 WL 550470, at *6 (2d Cir. 2020) (citing

Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir.

2005)).  "A rule of proportionality would make it difficult, if

not impossible, for individuals with meritorious civil rights

claims but relatively small potential damages to obtain redress

from the courts."  Id. at *7 (citation omitted).  Indeed, the

"public interest in private civil rights enforcement is not
limited to those cases that push the legal envelope; it is
perhaps most meaningfully served by the day-to-day private
enforcement of these rights, which secures compliance and deters
violations." Id. (citation omitted).

Nonetheless, a presumptively reasonable fee must be one
that "a paying client would be willing to pay." Lilly, 934 F.3d
at 230 (citation omitted). "[T]he lodestar -- the product of a
reasonable hourly rate and the reasonable number of hours
required by the case -- creates a 'presumptively reasonable
fee.'" Id. at 230 n.36 (citation omitted).

> In determining what rate a paying client would be
> willing to pay, the district court should . . . bear
> in mind that a reasonable, paying client wishes to
> spend the minimum necessary to litigate the case
> effectively. The district court should also consider
> that such an individual might be able to negotiate
> with his or her attorneys, using their desire to
> obtain the reputational benefits that might accrue
> from being associated with the case.

Id. at 230 (citation omitted). In making this inquiry, it is
"entirely appropriate" for a court to consider the "complexity
of a matter" because a "reasonable paying client" would consider
"the complexity of his or her case when deciding whether an
attorney's proposed hourly rate is fair, reasonable, and
commensurate with the proposed action." Id. at 231-32.

In determining a reasonable fee, a court also should consider the <u>Johnson</u> factors. <u>Id.</u> at 230. The <u>Johnson</u> factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n.3 (citing <u>Johnson v. Ga. Highway Exp., Inc.</u>, 488 F.2d 714, 716 (5th Cir. 1974)). An inquiry into the reasonableness of an hourly rate may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." <u>Townsend v. Benjamin Enters., Inc.</u>, 679 F.3d 41, 59 (2d Cir. 2012) (citation omitted).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." <u>United States v. Keshner</u>, 794 F.3d 232, 235 (2d Cir. 2015) (citation omitted). "[A]ttorneys are required to keep and submit contemporaneous records with their fee applications, absent unusual circumstances outside the attorney's control." <u>Restivo</u>, 846 F.3d at 591. In determining

the number of reasonably expended hours, a court should "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997). The "court should exclude excessive, redundant or otherwise unnecessary hours . . . ." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Courts have "ample discretion" in assessing the "amount of work that was necessary to achieve the results of a particular case." Cabala v. Crowley, 736 F.3d 226, 229 (2d Cir. 2013) (citation omitted). In exercising that discretion, a court may decline to award fees for a second senior attorney in a case that could have been prosecuted successfully by one. Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 130 (2d Cir. 2004) ("The number of attorneys reasonably necessary to prosecute a claim is best judged by the trial court, which actually observes the roles played by the attorneys at trial.").

"[T]he determination of fees should not result in a second major litigation." Restivo, 846 F.3d at 589 (citation omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). Thus, "trial courts may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time."
Id.

I.    The Parties' Positions

Ortiz calculates a lodestar for his counsel's fees of
$1,034,052.50.  This includes the work of three attorneys with
rates ranging from $525 to $675 per hour, two attorneys with
hourly rates of $225 per hour, and five paralegals at a rate of
$125 per hour.  These ten professionals are recorded as working
a total of 1,744.30 hours.  Discounting that request by 10% to
account for any unnecessary duplication of effort, Ortiz seeks
$930,647.25 in attorneys' fees.[7]

The defendants describe the prevailing rates in this
district as ranging between $250 to $600 in comparable cases.
For experienced counsel, the defendants propose that the rate
should be between $225 and $400 due to Ortiz's "limited success"
in this case.  The defendants also argue that this range is
appropriate due to the "straightforward" nature of this
excessive force and unlawful seizure action.  Thus, for Benno,
who the defendants recognize as "experience[d]" counsel, the
defendants suggest a rate of $400, and not the $675 proposed by
Ortiz.

---

[7] Ortiz seeks an additional $14,340 in fees for time spent
working on the fee application's reply brief.

Characterizing Lee as a "relative novice" in the area of civil rights litigation, they contend Lee's hourly rate should be no more than $300 per hour, rather than the $575 Ortiz seeks. The defendants argue that Joshua Abrams' hourly rate should be $225, and not $525, because of his inexperience and limited involvement.  The defendants propose that the hourly rate for the remaining two less experienced counsel should be $150 and for the paralegals the rate should be $100.

The defendants also argue that an across the board reduction of any fee award is warranted because Ortiz's counsel engaged in overbilling.  They cite vague time records and unnecessary, inefficient and duplicative work.

Ortiz also seeks expenses of $30,017.10.  The defendants request that the costs be reduced to $8,268.31.  In his reply, Ortiz does not contend that his reimbursement for costs should exceed $8,268.31.

I.   Hourly rate

The reasonable hourly rate for principal trial counsel in this case can be no more than $300.  There are several considerations that make this figure an appropriate and reasonable hourly rate.

This was a very simple § 1983 action.  There were only three participants in the events at issue and those events lasted about an hour.  Two officers found a drunken man in the

12

street and called an ambulance.  They kept him in their custody until he was safely transported to the hospital and sedated. When the man was discharged the next day, the hospital learned that he had a fractured knee.  There were no other witnesses to the incident and no camera footage.  The City could not dispute the existence of the injury, and therefore the central issue the jury had to resolve was whether the officers were responsible for the fractured knee.

As a result, the litigation of the action was also straightforward.  There was no motion to dismiss.  There were very few documents to examine other than hospital records, and those were not voluminous.  Only three depositions were taken; only Ortiz and two defendant officers were deposed.  Most of the claims in the complaint were dismissed before summary judgment motion practice.  The Court provided the parties with the governing case law for the sole evidentiary issue of any complexity:  the admissibility of medical records reflecting Ortiz's alcohol abuse.[8]  The only claims at trial were for

---

[8] The Court provided the parties with the citations to the controlling case law at the final pretrial conference and gave them an opportunity to submit letter briefs regarding the admissibility of the medical records reflecting Ortiz's alcoholism.

wrongful seizure and the use of excessive force.[9]  The trial was over in a week, with only five witnesses testifying.

Discovery, the motions in limine, as well as the appeal to the Second Circuit, were all handled by Lee, an attorney with limited experience in civil rights litigation and limited courtroom experience.  Lee graduated from Cardozo Law School in 2008, and within several months of graduation, began a solo practice.  Lee is primarily an immigration attorney, although he has been involved in seven civil rights cases other than this one.[10]

The defendants assert that the hourly rate for similarly inexperienced counsel would not exceed $300.  They are correct. Courts within this District have recognized that, "for experienced attorneys, hourly rates of $300-400 are unremarkable in civil rights cases in the Southern District," and that "awards exceeding $400 per hour are only warranted in unusually difficult and complex cases."  Independence Project, Inc. v. Ventresca Bros. Construction, 397 F. Supp. 3d 482, 496 (S.D.N.Y. 2019) (citation omitted); see also Local 1180, Commc'n Workers of Am., AFL-CIO v. City of New York, 392 F. Supp. 3d 361, 380

_____

[9] Ortiz withdrew his assault and battery claim against Vazquez prior to the jury's deliberations.

[10] Lee does not identify any of these cases as having proceeded to trial.

(S.D.N.Y. 2019) (finding that $350 is a reasonable rate for an
attorney with ten years of experience, mostly in employment and
civil rights law); Wright v. City of New York, 283 F. Supp. 3d
98, 104 (S.D.N.Y. 2017) ("[T]he prevailing rate for civil rights
attorneys" with roughly a decade of experience in solo practice
and as a member of a two-attorney firm "is between $250 and $350
an hour."); Shabazz v. City of New York, No. 14cv6417 (GHW),
2015 WL 7779267, at *3 (S.D.N.Y. Dec. 2, 2015) ("Courts in this
district have generally determined that the range of appropriate
fees for experienced civil rights litigators is between $350 and
$450 per hour."); Dancy v. McGinley, No. 11cv7952 (LMS), 2015 WL
6693326, at *5-6 (S.D.N.Y. Sept. 21, 2015) (awarding $400 per
hour for experienced civil rights attorney with sixteen years of
experience).  In Lilly, an attorney who had graduated from law
school in 2001 and had handled at least 167 cases in the
Southern District alone -- and thus who had far more experience
than Lee -- was awarded a $450 hourly rate for litigating a
false arrest, excessive force, and illegal detention case.
16cv322 (ER), 2017 WL 3493249, at *1 (S.D.N.Y. Aug. 15, 2017),
reversed on other grounds, 934 F.3d at 222.  Accordingly, Ortiz
is awarded attorneys' fees for Lee's work at the reasonable
hourly rate of $300.

    Benno's work is not entitled to a higher rate.  While Benno
has significant experience in the area of civil rights

litigation and is an able trial attorney, Lee identified himself
as the principal trial counsel and functioned as such for the
bulk of the litigation.  Lee would have been required to try the
case alone if Benno were unavailable.  While the trial of the
case was delayed by months to accommodate the schedules of
counsel and witnesses, that accommodation should not dictate the
hourly rate.

The results of the litigation do not suggest that a higher
hourly rate is appropriate.  Most of the claims pleaded in the
complaint had disappeared by the time of the trial, including
the Monell claim.  At trial, the jury soundly rejected Ortiz's
testimony that he had been attacked from behind without any
provocation by an officer, and then sent to the ground by the
officer's brutal attack.  The jury ruled in the defendants'
favor on the unlawful seizure claim, explained in its answer to
an interrogatory that Ortiz was already on the ground when the
officers first observed him, and rejected the request for an
award of punitive damages.  An award of punitive damages would
certainly have been appropriate if the jury had believed Ortiz's
description of the officers' vicious, unprovoked assault on him.

While it is true that the jury awarded Ortiz compensatory
damages, this appears largely due to their decision to give him
the medical care for his knee that his medical expert testified
Ortiz would need.  In other words, much of Ortiz's recovery was

due to the expense of this medical procedure, not a persuasive factual record establishing the defendants' wrongdoing developed by Ortiz's counsel.

In sum, consideration of the Johnson factors does not suggest that an hourly rate in excess of $300 is warranted to obtain a qualified attorney who would agree to represent Ortiz in this "garden-variety" litigation. Lilly, 934 F.3d at 232. This case was not complex and raised no novel issues. It did not require special skill or experience from counsel, a fact that is confirmed by Lee's inexperience in handling civil rights cases. To the extent that the dispute over the admissibility of Ortiz's pre- and post-incident medical records presented a legal issue that rose above the level of routine, the Court provided the parties with the standards that would govern their admission at trial. See Ortiz II, 2017 WL 5613735, at *7-11. In doing so, it was noted explicitly that the Court's guidance on this subject was "not novel." Id. at *7. Recognizing that "a reasonable paying client would consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate with the proposed action," Lilly, 934 F.3d at 231-32, a rate of $300 per hour is reasonable here.

The same considerations apply in determining the reasonable hourly rate for an associate to assist Lee in this litigation.

Given these factors, an hourly rate of $200 is appropriate for an associate in this case. Lewis v. Am. Sugar Refining, Inc., No. 14cv2302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (noting that "[c]ourts in this district have approved hourly rates of . . . $200 to $350 for associates" in civil rights cases).

The reasonable hourly rate for the clerical work performed in this matter is $95. HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 722 (S.D.N.Y. 2018) (finding that an hourly rate of $95 for clerical work is appropriate because it is below the rate of $125 that has been approved for paralegal work). "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate by either a paralegal or an attorney performing such tasks." Lilly, 934 F.3d at 233 (citation omitted). The paralegals' timesheets indicate that they were used for clerical and administrative tasks, such as "call [Ortiz], wrong number" or "[l]ocate [Ortiz] after his phone broke." Ortiz's brief in support of his motion for attorneys' fees confirms that paralegals were used for clerical and administrative tasks, as it explains that the attorneys "attempted to use paralegal for clerical and administrative tasks."

III. Reasonable Hours

The second component of the calculation of the presumptively reasonable fee is to calculate the number of hours

reasonably expended.  In determining the number of hours reasonably expended on this case, it bears repeating that a court must "exclude excessive, redundant or otherwise unnecessary hours."  Quarantino, 166 F.3d at 425.

The two lead counsel, Lee and Benno, assert that they worked 734 and 771.30 hours, respectively, on this case.  That is equivalent to almost 38 weeks of work (measured in 40-hour work weeks), or over four months of attorney time devoted to claims that prompted three depositions and were tried in the course of one week.  This represents an extraordinary misallocation of resources.  Nothing in this case supports these numbers.

A single lawyer would have spent conservatively about 280 hours on this litigation, and generously about 340 hours.  This calculation takes into account, among other things, the hours that were necessary to do each of the following: (1) pretrial work, including the notice of claim practice, drafting the complaint and preparing for and attending the initial pretrial conference, (2) taking or defending three depositions, (3) summary judgment practice, (4) briefing on motions in limine and trial preparation, (5) trial, (6) the post-trial motion, and (7) appeal.

This amount of time would be adequate given the lack of novelty and complexity of this run-of-the-mill § 1983 action.

Lilly, 934 F.3d at 232 (in determining hours billed, a court
should also consider the novelty and complexity of the case).
The nature of the case also did not require the supersized team
of ten lawyers and paralegals that Ortiz asserts contributed to
his limited victory at trial.  The reasons Ortiz provides for
requiring multiple law offices in this matter further clarify
that any paying client would have determined that one attorney
with limited support from an associate and clerical person would
have sufficed.  Benno sought assistance from Lee because Ortiz
was a Spanish speaker, and Lee's office, though not Lee himself,
employed a Spanish speaking attorney.  But, a paying client
would seek counsel from a lawyer with whom he could communicate
directly or with the assistance of a translator.  Adding a
second firm that would duplicate expenses would be unreasonable
for the limited purpose of employing a Spanish speaker.  Ortiz
also explains that Lee was necessary because, at the time of the
litigation, Benno was merging his legal practice with another
firm and needed to focus his attention on this professional
transition.  A paying client would not retain counsel who could
not adequately attend to his case.  Finally, Ortiz asserts that
multiple firms were needed so that work could be divided,
efficiently and expeditiously.  The billing records indicate,
however, that Benno and Lee duplicated work and spent many hours
consulting with each other.  No paying client would support an

expenditure like this.  It is therefore appropriate to award
fees that contemplate the work of a single lead lawyer, not the
work of two.

On top of the 340 hours allocated for one lead counsel to
litigate the merits of this case,[11] 10 hours is awarded for the
time lead counsel spent working on the fee application.  As a
general matter, "a reasonable fee should be awarded for time
<u>reasonably</u> spent in preparing and defending an application" for
fees under the federal civil rights fee-shifting statutes.
<u>Weyant v. Okst</u>, 198 F.3d 311, 316 (2d Cir. 1999) (emphasis
supplied).  Ortiz seeks an additional $14,340.00 in fees for
22.80 hours spent working on the fee application's reply brief
alone.  This request is unreasonable.

Eighty hours is provided for the work of a single associate
in assisting lead counsel throughout this litigation, not the
148.3 hours sought.  It would be reasonable for Ortiz to request
the presence of an associate to aid lead counsel at trial, and
for lead counsel to rely on an associate to assist in motion
practice throughout the litigation.  It also would be reasonable
for counsel to request assistance with clerical work in this
litigation.  An additional 120 hours, not the 190.7 hours

---

[11] This represents a reduction of roughly 50% of the hours
requested by Lee.

sought, is provided for the clerical work that was necessary for this case.

In total 350 hours at a rate of $300, 80 hours at a rate of $200, and 120 hours at a rate of $95, amounts to $132,400. The Court finds that this amount would be an appropriate award of attorneys' fees in this § 1983 action. The defendants, however, have not requested an amount below $221,502.98 in attorneys' fees. The Court declines to award an amount lower than that proposed by the defendants.

IV. Costs

Ortiz seeks $30,170.10 in costs. "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." Id. (citation omitted). In cases brought under § 1983, plaintiffs are not entitled to expert fees. W. Va. Univ. Hosps. v. Casey, 499 U.S. 83, 102 (1991).[12]

---

[12] After Casey, the Civil Rights Act of 1991 amended 42 U.S.C. § 1988 to give courts discretion to shift expert fees to the

Ortiz is awarded the amount of costs proposed by the defendants, $8,268.31. Ortiz does not dispute this figure. The amount Ortiz originally requested, $30,170.10, included $12,400.00 in expert-related costs, as well as $7,492.87 in costs related to his appeal. Expert fees are not recoverable by a § 1983 plaintiff and the Second Circuit already awarded Ortiz costs associated with the appeal, which he received. As Ortiz does not contest the additional 30% reduction requested by the defendants, that reduction is applied.

## Conclusion

Ortiz is awarded $221,502.98 in attorneys' fees and $8,268.31 in costs.


Dated:    New York, New York
          February 14, 2020

                              _____
                                        DENISE COTE
                              United States District Judge




---

losing party in cases arising under 42 U.S.C. §§ 1981 and 1981(a). <u>Casey</u> still prohibits the award of expert fees in § 1983 cases.